IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SECURE HEALTH PLANS OF GEORGIA, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 5:10-CV-417 (MTT) |
| DCA OF HAWKINSVILLE, LLC, f/k/a HAWKINSVILLE DIALYSIS CENTER, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## ORDER

This matter is before the Court on the Motion for Preliminary Injunction (Doc. 3) (the "Motion") filed by Plaintiffs Taylor Health Care Network, Taylor Regional Benefits Plan (collectively "Taylor") and Secure Health Plans of Georgia, LLC. For the following reasons, the Motion is granted in part and denied in part.

### I. FACTUAL BACKGROUND

The Plaintiffs seek to enjoin consolidated arbitration proceedings involving the parties scheduled to begin December 3, 2010. Secure Health seeks to enjoin the arbitration of contract and ERISA claims asserted by DCA of Hawkinsville, LLC ("DCA") against Secure Health because such claims are outside the scope of its arbitration agreement with DCA. Taylor seeks to enjoin the arbitration of DCA's contract and ERISA claims against it because there is no arbitration agreement between Taylor and DCA. Both Plaintiffs argue that DCA's claims, in reality, are a "roundabout" assault on Taylor's employee benefit plan and thus should be enjoined. It is unclear if either Plaintiff is asking the Court to enjoin the arbitration between Taylor and Secure Health.

**A.     The Contracts**

The case arises out of two agreements.  The first is an agreement between Taylor and Secure Health (the "Taylor/SH Agreement") pursuant to which Secure Health serves as the third-party administrator for the self-funded health-benefit plan that Taylor provides its employees.  According to the agreement, Secure Health is to "process and adjudicate all claims under" the agreement according to "the claim procedures and standards established by the Plan."  Medical providers submit claims for payment to Secure Health, but Secure Health submits the claims to Taylor for payment.  Taylor then remits payment directly to the provider.

There are two particularly relevant provisions in the Taylor/SH Agreement—the indemnity provision and the arbitration provision.  According to the indemnity provision, each party will

> indemnify and hold harmless the other party . . . from any loss, damage, injury, liability, tax, fine, penalty, cost (including any reasonable attorney's fees), expense[] and/or claim[] (including any claim by a third party) arising out of or resulting from any act, performance or failure to act of the Indemnifying Party . . . under this Agreement . . . .

According to the arbitration provision,

> Any dispute, controversy or claim arising out of or in connection with, or relating to, this Agreement or any breach or alleged breach hereof shall be resolved . . . pursuant to the Georgia Arbitration Code . . . .  Any award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered in the highest court of the forum, State or Federal, having jurisdiction or as provided under the [Georgia Arbitration] Code.

The second agreement at issue is between Secure Health and DCA (the "DCA/SH Agreement"). According to this agreement, DCA is to provide in-network dialysis services to "Eligible Persons," as defined by the DCA/SH Agreement, and Secure Health administers those claims. Specifically, DCA submits claims for payment to Secure Health and Secure Health uses "its best efforts to ensure that Payor . . . shall use all reasonable efforts to make all payments due to Provider within forty-five (45) days following receipt by Payor . . . of a complete and proper claim form . . . ." It is incumbent upon DCA to notify Secure Health of a Payor's failure to pay. "[U]pon proper notification, Secure Health shall take reasonable measures to require Payor to comply with the provisions of the Payor Agreement." As in the Taylor/SH Agreement, DCA and Secure Health agreed that "[t]he sole and exclusive remedy for resolution of any disputes or claims between Secure Health and Provider shall be binding arbitration . . .," which arbitration award "shall be binding, final and conclusive on the parties."

There is no written agreement between Taylor and DCA. DCA's sole means of rectifying any payment issue outside of litigation appears to be through Secure Health.

**B.     Payment and Arbitration**

As far as the Court is aware, from 2002 to 2009 Secure Health processed the claims for both DCA and Taylor, and Taylor paid DCA at an agreed-upon rate. In 2009, however, Taylor unilaterally and without notice to DCA amended its employee-benefits plan to reduce significantly the reimbursement rate for dialysis services. Taylor argues that it was authorized to do this by its own employee-benefits plan. Again, there is no written agreement between Taylor and DCA. DCA complained to Secure Health about

the reduced payment and Secure Health responded that Taylor made the changes pursuant to all relevant agreements.

DCA, pursuant to its contract with Secure Health, demanded arbitration in March of 2010. Secure Health and DCA entered into the first Arbitration Agreement on May 19, 2010.

By letter dated May 13, Secure Health demanded that Taylor submit to arbitration "pursuant to 9.6 of the . . . Agreement between Secure Health and Taylor." When Taylor did not respond, Secure Health filed a state court action seeking to compel Taylor to join the pending arbitration. According to the complaint,

> Secure Health contends that if it is found liable to DCA in the arbitration between DCA and Secure Health, Taylor is liable to Secure Health and must indemnify Secure Health for any damages paid by Secure Health to DCA. As such, Secure Health asserts a Third-Party claim against Taylor pursuant to the terms of the[ir] Agreement.

In September, Taylor consented to arbitration. The two arbitrations, between Secure Health and DCA and between Secure Health and Taylor, were then combined. Thereafter the parties entered a new Arbitration Agreement which superseded the May 19 agreement. According to the new Arbitration Agreement, the parties "agree to arbitrate their dispute regarding an alleged breach of that Ancillary Provider Agreement dated April 1, 2002," i.e., the Secure Health/DCA Agreement. The claims at issue, the Arbitration Agreement further states, were set out in DCA's March 31, 2010, demand letter to Secure Health. That demand letter alleged that "beginning in January 2009, Secure Health . . . breached and continues to breach the [Secure Health/DCA]

Agreement by failing to make payment to DCA in accordance with article 5 of the Agreement."

In October 2010, Taylor suggested to the Arbitrator that DCA's claims were ERISA claims subject to complete preemption and therefore were removable from arbitration. The Arbitrator asked the parties to submit briefs on the issue. Taylor declined to submit such a brief and instead filed this declaratory judgment action. Although Secure Health joined Taylor in filing this action, it did submit a brief. Secure Health argued that because DCA's claims were for benefits under an ERISA plan, those claims were preempted by ERISA. Secure Health also argued that DCA's claims were actually claims against Taylor and that they were not subject to arbitration because no provision authorized DCA to arbitrate its disputes with Taylor.

On November 10, the Arbitrator issued his "Reasoned Opinion of Arbitrator Regarding ERISA Preemption," in which he ruled that "[t]he Parties to this arbitration proceeding have specifically agreed to resolve any disputes pursuant to arbitration." In support, he cited the arbitration provisions between Secure Health and Taylor and between DCA and Secure Health. However, he did not address the lack of any agreement to arbitrate between DCA and Taylor and seemed to suggest that all claims were subject to arbitration, including any claim by DCA against Taylor. The Arbitrator also ruled that any ERISA claims were not completely preempted and were therefore arbitrable.[1]

---

[1] The Arbitrator further ruled that even if the claims were subject to complete preemption, Taylor did not timely move for removal; and that, in any event, the claims at issue

Shortly after the Arbitrator issued his Opinion, Secure Health and Taylor filed this Motion for a Preliminary Injunction, asking the Court to enjoin the pending arbitration "until further order of this Court specifically finding it appropriate for said arbitration to continue."

## II. DISCUSSION

There are three broad categories of claims that are potentially at issue in the pending arbitration: all claims, under contract or ERISA, explicitly and implicitly asserted by DCA against Secure Health; all claims, under contract or ERISA, explicitly and implicitly asserted by DCA against Taylor; and Secure Health's indemnity claim against Taylor. The Court will address each in turn. First, however, it is appropriate to note what the parties do not contend. The plaintiffs do not argue that Georgia law precludes arbitration and DCA does not question the Court's subject matter jurisdiction which the Plaintiffs base on ERISA.

### A. DCA's Claims Against Secure Health

There are two issues regarding DCA's claims against Secure Health: whether they are within the scope of the arbitration agreement and whether they are arbitrable.

The first issue is easily resolved. The DCA/SH Agreement's broad arbitration clause states that the "*sole and exclusive remedy* for the resolution of *any* disputes or claims between Secure Health and DCA shall be binding arbitration." (emphasis added). The arbitration clause provides no exceptions. There is no way that any claim

---

were "rate of pay" rather than "right of payment" challenges and therefore were not even ERISA claims.

arising out of the DCA/SH Agreement, ERISA or otherwise, would not be subject to the arbitration provision.

The next issue is whether the claims are arbitrable. There is no argument that DCA's claims based purely on contract are not arbitrable. However, Secure Health argues that DCA's ERISA claims, as well as any contract claim that involves the interpretation of Taylor's ERISA plan, are completely preempted and therefore are not arbitrable.[2]

Prior to the Supreme Court's decisions in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) and *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989), there was some disagreement among the circuits regarding whether ERISA claims were arbitrable. *See, e.g., Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923 (3d Cir. 1985) *overruled by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993); *Bird v. Shearson Lehman/American Express, Inc.*, 871 F.2d 292 (2d Cir. 1989) *vacated by Quijas*, 490 U.S. 477; and *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475 (8th Cir. 1988). After *McMahon* and *Quijas*, however, the courts have been uniformly held that ERISA claims are arbitrable.

---

[2] For the purposes of the following discussion, the Court assumes that DCA asserts ERISA claims against Secure Health in the pending arbitration. While this seems to be a matter of dispute between the parties, it is not for the Court to determine at this stage.

In reaching this conclusion, courts have turned to the policy underlying the Federal Arbitration Act, 9 U.S.C. § 2, favoring arbitration. *See, e.g.*, *Pritzker*, 7 F.3d at 1117.

> Th[e] duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded upon statutory rights[, such as ERISA]. . . . "[W]e are well past the time when judicial suspicion of the desirability of arbitration and the competence of arbitral tribunals' should inhibit enforcement of the [FAA] 'in controversies based on statutes."

*McMahon*, 482 U.S. at 226 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985)). In view of the strong Congressional intent favoring arbitration, a party seeking to avoid an arbitration clause faces a heavy burden.

A party "under the analysis in *Shearson*, the [FAA] of its own force dictates enforcement of [an] agreement to arbitrate ERISA claims unless [the party opposing arbitration] satisfies the burden . . . to show Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Sulit*, 847 F.2d at 478 (internal quotations and citations omitted). A court may deduce Congress's intent to preclude a waiver of judicial remedies from "(1) the text of the statute; (2) the statute's legislative history; or (3) the inherent conflict between arbitration and the statute's underlying purposes." *Id.* (internal quotations and citations omitted).[3]

---

[3] Courts after McMahon have held that ". . . a party may not be compelled to arbitrate its claims" if "there is a 'well-founded' claim that the [arbitration] agreement[] resulted from fraud or coercion . . . ." *Pritzker*, 7 F.3d at 1118. As there is no claim here that either arbitration agreement resulted from fraud or coercion, the Court need not analyze this point.

Applying this analysis, it is clear that Congress did not intend to preclude a waiver of judicial remedies for ERISA rights. As other courts have held, the text of ERISA does not suggest an intent to preclude waiver. *Pritzker*, 7 F.3d at 1118-19. Not even ERISA's conferral of exclusive jurisdiction on the federal courts, 29 U.S.C. § 1132(e)(1), evinces such an intent:

> As the [Supreme] Court has repeatedly stated, such jurisdictional provisions speak only to the issue of which judicial forum is available, and not to whether an arbitral forum is unavailable. In other words, such provisions do not constitute Congressional statements that statutory ERISA claims cannot be arbitrated.

*Pritzker,* 7 F.3d 1118-19 (internal citations omitted).

Nor can any Congressional intent to preclude arbitration be found in ERISA's legislative history or some inherent conflict between arbitration and ERISA's underlying purpose. *See, e.g., Sulit,* 847 F.2d at 478; and *Pritzker*, 7 f.3d at 1119. Moreover, the Plaintiffs have not pointed to anything in the legislative history or to any conflict between arbitration and ERISA's purpose to show a Congressional intent to preclude a waiver of judicial remedies.

All of DCA's claims against Secure Health that arise out of the DCA/SH Agreement are both within the scope of the arbitration provision and are properly before the Arbitrator. Therefore, this Court will not issue an injunction as to these claims.

**B.    DCA's Claims Against Taylor**

The nature of the claims asserted in the arbitration by DCA against Taylor is not clear. Taylor and Secure Health contend that DCA's claims for payment can only be

asserted against Taylor because the DCA/SH Agreement does not obligate Secure Health to pay DCA's claims. DCA does not dispute that it asserts claims against Taylor, but it denies those claims implicate ERISA, although a DCA representative testified that Taylor's plan was obligated to pay DCA's claims. (Dep. of Newett, at 59-60) The Arbitrator, in his Opinion, seemed to recognize that DCA cannot assert claims against Taylor and he expressly acknowledges that Taylor was not a party to the arbitration dispute between Secure Health and DCA. While the record before the Court is sparse, and the parties' respective contentions have not been fully fleshed out, it is difficult, at this point, to see how DCA's claims cannot, directly or indirectly, be claims against Taylor's Plan.

What is clear is that there is no contract between DCA and Taylor and thus Taylor, by contract, has not agreed to arbitrate DCA's claims against it. Neither has Taylor in the arbitration proceeding agreed to arbitrate those claims. On the contrary, whether by accident or design, Taylor has limited its participation in the arbitration proceeding to the claims asserted against it by Secure Health. DCA cites no contract or agreement in which Taylor agreed to arbitrate any claim for payment, whether under contract or ERISA, by DCA.

Because DCA's claims against Taylor are not properly before the Arbitrator, the Court must decide whether to issue a preliminary injunction. In order to obtain a preliminary injunction a movant must show: "(1) a substantial likelihood that [the movant] will ultimately prevail on the merits; (2) that [the movant] will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant

outweighs any damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest." *Warren Pub., Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1516 (11th Cir. 1997). Here, there is a substantial likelihood that Taylor will prevail on the merits of its declaratory judgment action because DCA's claims are not properly before the Arbitrator. Next, Taylor has argued that if the arbitration of DCA's claims against Taylor proceeds "the Taylor Plan will suffer great financial harm and its viability will be threatened." As there would be little damage to DCA because of its inability to arbitrate claims that it did not have a contractual right to arbitrate, any injury to Taylor would outweigh any damage to DCA. Finally, as this is a private dispute between Taylor and DCA, an injunction is not averse to the public interest.

Accordingly, this Court will preliminarily enjoin DCA from arbitrating any implicit or explicit claim, whether under contract or ERISA, it has implicitly or explicitly asserted directly against Taylor. This injunction will apply until further notice from this Court.

**C.     Secure Health Claims Against Taylor**

Finally, there is no reason to enjoin the arbitration of any claim for indemnification between Secure Health and Taylor. Taylor is bound by the Taylor/SH Agreement to indemnify Secure Health for any loss due to "any act, performance or failure to act . . . under this Agreement," and to arbitrate any dispute involving such indemnification. Moreover, when Taylor joined the arbitration, Taylor expressly consented to Secure Health's complaint in the state court which sought to compel Taylor to arbitrate because "Taylor is liable to Secure Health and must indemnify Secure Health for any damages

paid by Secure Health to DCA." Finally, as discussed above, to the extent that Secure Health's indemnification claim against Taylor implicates ERISA, such a claim is arbitrable. Therefore, Secure Health's claim for indemnification against Taylor is properly before the Arbitrator and this Court will not issue an injunction to stop the arbitration of such a claim.

### III. CONCLUSION

For the foregoing reasons, the Motion (Doc. 3) is **GRANTED** in part and **DENIED** in part**.** The Court will not enjoin the arbitration of any claims arising under the DCA/SH Agreement that DCA has implicitly or explicitly asserted against Secure Health, whether contract or ERISA. Nor will the Court enjoin the arbitration of any indemnification claim asserted by Secure Health against Taylor, whether or not such a claim involves the interpretation of an ERISA plan. However, the Court will enjoin, until further notice, the arbitration of any claims that DCA has implicitly or explicitly asserted against Taylor.

**SO ORDERED**, this the 22nd day of November, 2010.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

jch